In the United States District Court
For the District of Columbia

| | |
|---|---|
| Margot Canaday, *pro se*  )<br>6922 Prince Georges Avenue  )<br>Takoma Park, MD 20912  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>U.S. Citizenship and Immigration Services,  )<br>U.S. Department of Homeland Security  )<br>111 Massachusetts Avenue, N.W.  )<br>ULLICO Building  )<br>Washington, D.C. 20529  )<br>  )<br>  Defendant.  )<br>_____ ) | Case No.1:08-CV-00158 (RMC) |

**Plaintiff's Reply to Defendant's Opposition to In Camera Inspection
and Opposition to Defendant's Proposed Scheduling Order**

---

Contrary to defendant's assertion, plaintiff is not seeking disclosure of information from the records of CIS that would reveal the identities of private individuals. However, plaintiff *is* seeking disclosure of all non-exempt information, including information that concerns private individuals. It does not matter whether CIS appreciates the historical significance and public interest value of the information. CIS may not redact entire blocks of text on the basis of Exemption 6 simply because the information concerns private individuals. Pursuant to Exemption 6, CIS may redact only those portions of the information that would reveal the identities of the private individuals and must release any remaining information that is reasonably segregable.

Also contrary to defendant's assertion, in camera inspection is entirely appropriate at this juncture. The volume of material at issue is relatively small—

RECEIVED

APR 1 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

consisting of the redacted portions of text on eighteen pages. In camera review would resolve the matter far more expediently than engaging in further briefing, thereby saving the valuable time and resources of this Court. Moreover, given the limited ability that defendant has exhibited thus far to understand Exemption 6 of FOIA[1] and distinguish between a meaningful explanation and a conclusory assertion,[2] it is easy to imagine that in camera inspection would still be necessary even if defendant proffers a *Vaughn* index.

In any event, the Court should reject defendant's proposed scheduling order as a matter of equity. The undisputed facts show that defendant delayed in processing plaintiff's FOIA request for more than two years. But for the order of this Court, plaintiff would still not have any responsive documents from defendant. Now, defendant seeks to unnecessarily delay the resolution of this litigation in a manner that clearly may harm plaintiff. As plaintiff averred in her initial declaration, she is on deadline to complete her book manuscript and deliver it to the publisher by June 1, 2008. Pursuant to defendant's proposed schedule, briefing would not even be completed until July 27, 2008. As a result, any additional information that may be produced to plaintiff as a result of further proceedings that occur according to defendant's proposed briefing schedule would be of little value to plaintiff. That is extremely unfair to plaintiff who has been forced by defendant to take extraordinary steps simply to get what is lawfully due to her under the FOIA. Therefore, if the Court denies in camera inspection, it should order an expedited

---

[1] As previously noted, defendant improperly redacted throughout the production the names of government officials from documents reflecting actions taken by them in their official capacities on the basis of Exemption 6. Notwithstanding the extensive qualifications of CIS attorney Eric Banks as set out in both of his declarations, this reflects a profound misunderstanding of FOIA Exemption 6.

[2] In paragraph 10 of the most recent declaration of Mr. Banks, he states that "defendant provided detailed explanations and justifications for the information withheld" in the letter of March 28, signed by Diane Cejka. However, Ms. Cejka's letter states only that information was withheld pursuant to Exemption 6 because the personal privacy interest outweighed any public interest. That is a conclusory assertion, not a meaningful explanation or justification.

briefing schedule that will allow the Court to an order further relief to plaintiff, if appropriate, before June 1, 2008.

## Discussion

Plaintiff makes two points of law in reply to defendant's filing. First, in reply to defendant's assertion that releasing any information concerning private individuals would reveal their identities, plaintiff directs the Court to the case of *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). In that case, the Supreme Court ordered the Air Force to release summaries of disciplinary proceedings, provided that the personal identifying information was redacted. The Court held that Exemption 6 did not create a blanket exception for personnel, medical and similar files absent a clearly unwarranted invasion of privacy, *id.* at 371, and explained that "Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *Id.* at 381. The Court also held that Exemption 6 does not bar disclosure "merely because it cannot be guaranteed that disclosure will not trigger recollection of identity in any person whatever." *Id.* at 378.

The facts of plaintiff's case against CIS are analogous to *Rose*. Defendant is seeking to apply a blanket exception to the production of all information concerning private individuals rather than limiting its redactions to purely identifying information. However, defendant is overreaching in its redactions in violation of the FOIA and the law set out by the Supreme Court in *Rose*. There is no palpable threat to privacy interests, if the agency redacts the names and countries of origin of the individuals and releases the rest of the information. The individuals whose privacy is at issue here are aliens either being excluded or deported from the country after having been identified as homosexual. These are nearly anonymous individuals—arrested in bathrooms,

stopped by border guards because of appearance—whom it would be impossible to identify without names or country of origin. Indeed, it is unlikely that without such information one would even be able to identify a well known figure. But well known figures, such as actors, writers or athletes, suspected of homosexuality would be unlikely to turn up in these official documents anyway. They were usually waived into the country despite their sexuality—an inconsistency in enforcement that gay rights activists protested at the time.

For less high-profile individuals, the most likely outcome by far was something called "voluntary withdrawal" or "voluntary exclusion," which meant that an alien was convinced to withdraw application for entry or voluntarily leave the country without deportation proceedings. Those aliens literally disappear into the historical ether. Moreover, because individuals charged with homosexuality were extremely unlikely to prevail during this period, the historical ether into which they disappear is most likely a foreign country, making the possibility of identifying them even more remote. Indeed, it is precisely because such individuals are so difficult to find, that plaintiff has taken the time to pursue this litigation. There are few records available from this time period that reflect agency policy in these types of cases or the experiences of these individuals in the immigration process. This does not mean that plaintiff is interested in individual identities. She is, however, seeking whatever information is available in agency records to make some general conclusions about the aggregate experience of aliens vetted for homosexuality during this time period, and to understand how the law was actually carried out by the agency.

4

Second, in reply to defendant's assertion that in camera inspection is premature, plaintiff points out that the FOIA specifically authorizes the in camera examination of documents. *See* 5 U.S.C. § 552(a)(4)(B)(2000). Whether or not to undertake in camera inspection is a matter firmly committed to the "broad discretion of the trial court judge." *Spirko v. U.S. Postal Service*, 147 F.3d 992, 996 (D.C. Cir. 1998). In exercising this discretion, courts should give favorable consideration to in camera review where the number of records involved is relatively small and doing so would save the court and the parties time and resources. *Quinion v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). Defendant has offered no legal authority that stands for the proposition that in camera inspection may not occur now. No prejudice to defendant will result if the Court conducts the in camera inspection now. One way or another, the Court will decide whether defendant's Exemption 6 withholdings are lawful. Therefore, plaintiff urges the Court to exercise its broad discretion in favor of in camera inspection at this juncture to resolve this case as fairly and efficiently as possible.

## Conclusion

In the interest of judicial economy and fairness and for the other reasons stated, plaintiff respectfully requests that this Court: (1) grant her motion for in camera examination of the information redacted from the eighteen pages attached as Exhibit 1 to plaintiff's supplemental declaration and compel defendant to produce any of the information that is not lawfully exempt from disclosure; and (2) reject defendant's proposed scheduling order.

Dated: April 11, 2008                              Respectfully submitted,

*[signature: Margot C.]*

Margot Canaday, *pro se*
6922 Prince Georges Avenue
Takoma Park, MD 20912

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2008, I caused the foregoing:

**Plaintiff's Reply to Defendant's Opposition to In Camera Inspection and Opposition to Defendant's Proposed Scheduling Order**

to be filed with the Clerk of the Court via overnight mail and served on counsel for defendant via electronic mail.

*(signature)*
Margot Canaday, *pro se*
6922 Prince Georges Avenue
Takoma Park, MD 20912